CHIEF JUSTICE WILLIAMS
delivered the opinion op the codrt:
There are two important questions in this case :
1. Was Duncan responsible to the bank as indorser on Morehead’s bill of exchange for three thousand one hundred dollars, which had been dishonored, or was he released for want of due notice ?
2. Was the bank responsible to Duncan for two thousand nine hundred and twrenty-one dollars and twelve cents, money collected for him whilst he was éngaged in' the military service of the late “ Confederate States of America,” and in rebellion against the United State's, it being collected on a check drawn by the Bank of Virginia, at Richmond, on the Bank of America, New York City ?
The bill of exchange was drawn at Louisville, Ky., and accepted by Morehead, August 30, 1860, at four months’ time, payable at the house of J. J. Pierson & Co., New Orleans, Louisiana.
Duncan, in his answer to the suit and attachment of the bank, denies he had any notice of or knew that the bill of exchange had been dishonored
The evidence óf notice to Duncan, which was received without objection, consists of the following memorandum made by the clerk of the bank, since dead, whose duty it was to deliver notices: “Received January 8, 1861, with notices directed to C. S. Morehead and Blanton Duncan. Same day I delivered notice at the residence of Blanton Duncan, left with Ms daughter; also, I left notice at the office of C. S. Morehead with his son, he being absent.
*296 The evidence shows Duncan had only two daughters, and these respectively of the ages of four and seven years.
It is said in Story on Bills (sec. 297), “ If the notice is to be given to a .party in or near the place of the dishonor of the bill, and it is not sent by the general post, it should be sent to, or given at, his place of domicil, or Ms place of business, and either will be sufficient.”
In Bank of U. S. vs. Merls et al. (2 Rob. La., 117), the Supreme Court of Louisiana held, that a notice left at the domicil, or place of business, or left in the hands of a slave in the house, was sufficient. The court further stated that they regarded the well-settled law to be, that the notice must be personal, or left at his residence or place of business.
And in Manaden's adm'r vs. Kitchen (3 Rob. La., 261) the same court held the notary’s certificate sufficient which showed that notice of the protest was left at the indorser’s domicil, he being absent. It was objected that this did not show that the house was shut up, or, if open and inhabited, that the notice was left with any one in the house; but the court held that such language implied that he found the house open, and that though it was customary and perhaps proper to name the pel’s on with whom it was left, yet it was sufficient to mention that the notice was left at the party’s domicib
And in Franklin vs. Verbais (6 La., 727) the court held the statement that notice was executed by delivering the letter for G. de Montague to a person at her house sufficient.
And in Bank of Louisiana vs. Mansker (15 La., 115), a certificate stating that notice was left at defendant's store was sufficient, notwithstanding it was urged as irregular and insufficient, because it neither showed personal service nor that it was left with a proper person.
*297 In Conlon vs. Chaplin (15 La., 544), the certificate that notice was left at defendant’s domicil with a colored woman, he not being in, and there being no white person in or about the premises, the court said : “ It has been held by this court that notice of non-payment given indorser’s, by leaving it at their dwellings, is sufficient.”
In Cana vs. Friend (2 Cr. U. S. Cir. Ct. R., 370), held the evidence of the notary was sufficient when he testified that it was general practice to call at the residence of the indorser, and if he was not at home, to deliver notice to any person who came to the door where he knocked, and to request such person to deliver it to the indorser.
In Lord vs. Appleton (15 Maine R., 270), notice was left at defendant’s office, with a person there supposed to be a partner, but who in fact was not, nor did it appear who he was, yet this was held good, as the office being open, the person with whom it was left must be presumed to be lawfully there, until it should otherwise appear.
All these cases go to show that leaving notice at the domicil or place of business, whether with some one or not, is to be prima facie deemed serving or executing the notice.
In Parsons on Notes and Bills, 499, it is said notice left at place of business or abode of the party, with any one who is found there, will, ordinarily, be sufficient.
We think the great current of American authority establishes, that the leaving a notice at the place of abode or business of a party, with any one who may reside there or. be a member of the family, of sufficient age and discretion to take care of it, should be regarded as a delivery to the person; or, if it is not shown that any one was then within the premises, the leaving it at such place would be so.
*298 The only serious difficulty in this case is to determine which of the daughters should be presumed to have received it, and whether, either was of sufficiently mature years.
It may fairly be presumed from the memorandum, that the one to whom it was delivered was the one that responded to the call, and of sufficient intelligence to inform the clerk that she was Duncan’s daughter; for this is the only source made known to us by which he became possessed of such information; therefore, it may fairly be presumed that it was the elder of the two, and that she was of sufficient age and intelligence to deliver it to her father. We therefore regard the liability of Duncan as fixed on said bill of exchange.
As the bank gave Duncan credit for this money collected on said obligation, and is entitled only to a judgment for the remainder, it becomes useless to discuss or decide the other question presented on Duncan’s cross-suit and the reply thereto, though one of public interest.
Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.